
FILED

AO 242 (Rev. 09/17) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

DEC 16 2022

# UNITED STATES DISTRICT COURT

### for the

## EASTERN DISTRICT OF CALIFORNIA

CLERK U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____ DEPUTY CLERK

KINGSLEY OTUYA
_____
*Petitioner*

v.

WARDEN FCI, MENDOTA
_____
*Respondent*
*(name of warden or authorized person having custody of petitioner)*

Case No. 1:22-CV-01615 SRO (HC)
_____
*(Supplied by Clerk of Court)*

### PETITION FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241

#### Personal Information

1.  (a) Your full name: KINGSLEY OTUYA
    (b) Other names you have used: _____

2.  Place of confinement:
    (a) Name of institution: FCI MENDOTA
    (b) Address: P.O BOX 9, MENDOTA, CA 93640

    (c) Your identification number: 51611-424

3.  Are you currently being held on orders by:
    ☒ Federal authorities  ☐ State authorities  ☐ Other - explain:
    _____

4.  Are you currently:
    ☐ A pretrial detainee (waiting for trial on criminal charges)
    ☒ Serving a sentence (incarceration, parole, probation, etc.) after having been convicted of a crime
    If you are currently serving a sentence, provide:
    (a) Name and location of court that sentenced you: U.S District Court For the Western District Of Texas
    (b) Docket number of criminal case: 1:18-CR-00061(1)-RP
    (c) Date of sentencing: 7/17/2018
    ☐ Being held on an immigration charge
    ☐ Other (explain): _____

RECEIVED

DEC 16 2022

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY CLERK

#### Decision or Action You Are Challenging

5.  What are you challenging in this petition:
    ☒ How your sentence is being carried out, calculated, or credited by prison or parole authorities (for example, revocation or calculation of good time credits)

Page 2 of 9

AO 242 (Rev. 09/17) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

❏ Pretrial detention
❏ Immigration detention
❏ Detainer
❏ The validity of your conviction or sentence as imposed (for example, sentence beyond the statutory
    maximum or improperly calculated under the sentencing guidelines)
❏ Disciplinary proceedings
❏ Other *(explain)*: _____

_____

_____

6.    Provide more information about the decision or action you are challenging:
      (a)  Name and location of the agency or court:  Bureau of Prisons

      (b)  Docket number, case number, or opinion number:  Program Statement 5410.01
      (c)  Decision or action you are challenging *(for disciplinary proceedings, specify the penalties imposed)*:
      BOP program statement 5410.01 (Nov. 18, 2022) excludes aliens
      from applying First Step Act Earned time credit (ETC's) in Controvention
      of the FSA based solely Upon the fact that an Immigration detainer exists
      (d)  Date of the decision or action:  11/18/2022

**Your Earlier Challenges of the Decision or Action**

7.    **First appeal**
      Did you appeal the decision, file a grievance, or seek an administrative remedy?
      ❏ Yes        ☒ No
      (a)  If "Yes," provide:
            (1)  Name of the authority, agency, or court: _____

            _____
            (2)  Date of filing: _____
            (3)  Docket number, case number, or opinion number: _____
            (4)  Result: _____
            (5)  Date of result: _____
            (6)  Issues raised: _____

            _____

            _____

            _____

            _____

            _____

            _____

      (b)  If you answered "No," explain why you did not appeal: _____

            _____

8.    **Second appeal**
      After the first appeal, did you file a second appeal to a higher authority, agency, or court?
      ❏ Yes              ☒ No

AO 242 (Rev. 09/17) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

(a) If "Yes," provide:

    (1) Name of the authority, agency, or court: _____

    _____

    (2) Date of filing: _____

    (3) Docket number, case number, or opinion number: _____

    (4) Result: _____

    (5) Date of result: _____

    (6) Issues raised: _____

    _____

    _____

    _____

    _____

    _____

(b) If you answered "No," explain why you did not file a second appeal: _____

_____

9.    **Third appeal**

After the second appeal, did you file a third appeal to a higher authority, agency, or court?

☐ Yes    ☒ No

(a) If "Yes," provide:

    (1) Name of the authority, agency, or court: _____

    _____

    (2) Date of filing: _____

    (3) Docket number, case number, or opinion number: _____

    (4) Result: _____

    (5) Date of result: _____

    (6) Issues raised: _____

    _____

    _____

    _____

    _____

    _____

(b) If you answered "No," explain why you did not file a third appeal: _____

_____

10.    **Motion under 28 U.S.C. § 2255**

In this petition, are you challenging the validity of your conviction or sentence as imposed?

☐ Yes    ☒ No

If "Yes," answer the following:

(a)    Have you already filed a motion under 28 U.S.C. § 2255 that challenged this conviction or sentence?

    ☐ Yes    ☐ No

AO 242 (Rev. 09/17) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

If "Yes," provide:

(1) Name of court: _____

(2) Case number: _____

(3) Date of filing: _____

(4) Result: _____

(5) Date of result: _____

(6) Issues raised: _____

_____

_____

_____

_____

(b) Have you ever filed a motion in a United States Court of Appeals under 28 U.S.C. § 2244(b)(3)(A), seeking permission to file a second or successive Section 2255 motion to challenge this conviction or sentence?

❏ Yes ❏ No

If "Yes," provide:

(1) Name of court: _____

(2) Case number: _____

(3) Date of filing: _____

(4) Result: _____

(5) Date of result: _____

(6) Issues raised: _____

_____

_____

_____

_____

(c) Explain why the remedy under 28 U.S.C. § 2255 is inadequate or ineffective to challenge your conviction or sentence: _____

_____

_____

_____

_____

11. **Appeals of immigration proceedings**

Does this case concern immigration proceedings?

❏ Yes ☒ No

If "Yes," provide:

(a) Date you were taken into immigration custody: _____

(b) Date of the removal or reinstatement order: _____

(c) Did you file an appeal with the Board of Immigration Appeals?

❏ Yes ❏ No

AO 242 (Rev. 09/17) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

If "Yes," provide:

(1) Date of filing: _____

(2) Case number: _____

(3) Result: _____

(4) Date of result: _____

(5) Issues raised: _____

_____

_____

_____

_____

(d)    Did you appeal the decision to the United States Court of Appeals?

☐ Yes            ☐ No

If "Yes," provide:

(1) Name of court: _____

(2) Date of filing: _____

(3) Case number: _____

(4) Result: _____

(5) Date of result: _____

(6) Issues raised: _____

_____

_____

_____

_____

12.    **Other appeals**

Other than the appeals you listed above, have you filed any other petition, application, or motion about the issues raised in this petition?

☐ Yes            ☒ No

If "Yes," provide:

(a) Kind of petition, motion, or application: _____

(b) Name of the authority, agency, or court: _____

_____

(c) Date of filing: _____

(d) Docket number, case number, or opinion number: _____

(e) Result: _____

(f) Date of result: _____

(g) Issues raised: _____

_____

_____

_____

AO 242 (Rev. 09/17)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

## Grounds for Your Challenge in This Petition

13.  State every ground (reason) that supports your claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground. Any legal arguments must be submitted in a separate memorandum.

**GROUND ONE:** BOP P.S. 5410.01 Unlawfully restricts Petitioner from applying all of the First Step Act (ETCs) he has earned in Contravention of the First Step Act and 18 U.S.C.S. 3632 (d)(4)

(a) Supporting facts *(Be brief. Do not cite cases or law.):*

Petitioner has earned 12 months of ETCs While in BOP Custody. petitioner is stated to exit BOP Custody in October 2024, however the BOP should have applied all his ETCs and released him in September 2023. (~~See Memorandum of Law~~) ~~Case~~ Attachments #1 & 2

(b) Did you present Ground One in all appeals that were available to you?

☐ Yes          ☒ No

**GROUND TWO:** _____

_____

_____

(a) Supporting facts *(Be brief. Do not cite cases or law.):*

_____

_____

_____

_____

(b) Did you present Ground Two in all appeals that were available to you?

☐ Yes          ☐ No

**GROUND THREE:** _____

_____

_____

(a) Supporting facts *(Be brief. Do not cite cases or law.):*

_____

_____

_____

_____

(b) Did you present Ground Three in all appeals that were available to you?

☐ Yes          ☐ No

AO 242 (Rev. 09/17)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

**GROUND FOUR:** _____

_____

_____

(a)  Supporting facts *(Be brief.  Do not cite cases or law.)*:

_____

_____

_____

_____

_____

(b)  Did you present Ground Four in all appeals that were available to you?

☐ Yes                    ☐ No

14.    If there are any grounds that you did not present in all appeals that were available to you, explain why you did not: _____

_____

_____

_____

**Request for Relief**

15.  State exactly what you want the court to do:   Enjoin the BOP to Immediately
Calculate Petitioner's earned time credits and apply them.

_____

_____

AO 242 (Rev. 09/17) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

### Declaration Under Penalty Of Perjury

If you are incarcerated, on what date did you place this petition in the prison mail system:

_____December 13, 2022_____

I declare under penalty of perjury that I am the petitioner, I have read this petition or had it read to me, and the information in this petition is true and correct. I understand that a false statement of a material fact may serve as the basis for prosecution for perjury.

Date: __12/13/2022__

_____
*Signature of Petitioner*


_____
*Signature of Attorney or other authorized person, if any*

ATTACHMENT

1

DYLAN C. JONES, Petitioner, v. WARDEN J. ENGLEMAN, Respondent.
UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA
2022 U.S. Dist. LEXIS 185635
Case No. 2:22-cv-05292-MCS (GJS)
September 7, 2022, Decided
September 7, 2022, Filed

**Editorial Information: Subsequent History**

Rejected by, in part, Adopted by, in part, Writ of habeas corpus granted, Motion denied by, Judgment entered by, Dismissed by Jones v. Engleman, 2022 U.S. Dist. LEXIS 185029 (C.D. Cal., Oct. 7, 2022)

**Counsel**                        {2022 U.S. Dist. LEXIS 1}Dylan C. Jones, Petitioner, Pro se, San Pedro, CA.

For Warden J. Engleman, Respondent: Assistant 2241-194 US Attorney SA-CV, LEAD ATTORNEY, Office of US Attorney, Criminal Division - US Courthouse, Santa Ana, CA; Haoxiaohan Cai, Office of US Attorney, Los Angeles, CA.

**Judges:** GAIL J. STANDISH, UNITED STATES MAGISTRATE JUDGE.

## Opinion

**Opinion by:**             GAIL J. STANDISH

## Opinion

**AMENDED REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

This Amended Report and Recommendation is submitted to United States District Judge Mark C. Scarsi, pursuant to 28 U.S.C. § 636 and General Order No. 05-07 of the United States District Court for the Central District of California.

**INTRODUCTION**

On July 29, 2022, Petitioner, a prisoner in federal custody, filed a habeas petition pursuant to 28 U.S.C. § 2241 [Dkt. 1, "Petition"]. On August 16, 2022, 2021, Respondent filed a combined Answer and Motion to Dismiss the Petition [Dkt. 5, "Motion"], with a supporting Declaration of Maricela Bugarin ("Bugarin Decl.") and Exhibits ("Ex."). On August 25, 2022, Petitioner filed a Reply in response to the Motion [Dkt. 7, "Opposition"]. The matter, thus, is fully briefed, submitted, and ready for decision.

**BACKGROUND**

Petitioner is incarcerated at FCI-Terminal Island pursuant to his conviction{2022 U.S. Dist. LEXIS 2} for importation of methamphetamine and related sentence of 34 months imprisonment and five years of supervised release. [Bugarin Decl. ¶¶ 4.a - 4.b; Ex. A at 31-32.] If Petitioner earns all possible remaining good conduct time credits, his projected release date is April 9, 2023. [*Id.* ¶ 4.c; Ex. A at 31.]

The Petition stems from the First Step Act ("FSA"), a sentencing reform law that was signed into law on December 21, 2018. Among other things, the FSA enacted amendments to 18 U.S.C. §§ 3621,

DISHOT                                               1

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

3624, and 3632, which require the BOP to afford prisoners the opportunity to participate in "evidence-based recidivism reduction programs" and "productive activities," in turn allowing them to accrue "earned time credit" incentives for completion ("ETCs"). As the Ninth Circuit has described it:

> [P]aragraph 102(b)(1) amends [18 U.S.C.] § 3624 by adding subsection (g), which is relevant to the Act's creation of an earned time credit system.[fn. om.] [132 Stat.] at 5210-13. The Act requires that, within 210 days of its enactment, the Attorney General establish a "risk and needs assessment system" to, broadly speaking, review each prisoner's recidivism risk level, award earned time credit as an incentive for participation in recidivism reduction programming, {2022 U.S. Dist. LEXIS 3} and "determine when a prisoner is ready to transfer into prerelease custody or supervised release in accordance with section 3624." § 101(a), 132 Stat. at 5196-97. Section 3624(g) details the criteria for when a prisoner becomes eligible, considering earned time credit, for transfer to prerelease custody or supervised release. § 102(b), 132 Stat. at 5210-13. *Bottinelli v. Salazar*, 929 F.3d 1196, 1197-98 (9th Cir. 2019). *See also* 18 U.S.C. §§ 3621(h), 3632(a).

The FSA specifies the rate at which federal inmates may earn ETCs. *See* 18 U.S.C. § 3632(d)(4)(A)(i)-(ii). The FSA also provides that:

> Time credits earned under this paragraph by prisoners who successfully participate in recidivism reduction programs or productive activities *shall be applied* toward time in prerelease custody or supervised release. The Director of the Bureau of Prisons *shall transfer* eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release. 18 U.S.C. § 3632(d)(4)(C) (emphasis added). Eligibility for such ETC-fueled release into prerelease custody or supervised release is determined under 18 U.S.C. § 3624(g). Section 3624(g)(1) spells out the conditions for applying ETCs to effect early release as follows:

> (1) **Eligible prisoners**.--This subsection applies in the case of a prisoner (as such term is defined in section 3635) who-

> (A) has earned time credits under the risk and needs assessment system developed under subchapter D (referred to in this subsection as the "System") {2022 U.S. Dist. LEXIS 4} in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment;

> (B) has shown through the periodic risk reassessments a demonstrated recidivism risk reduction or has maintained a minimum or low recidivism risk, during the prisoner's term of imprisonment;

> (C) has had the remainder of the prisoner's imposed term of imprisonment computed under applicable law; and

> (D) (i) in the case of a prisoner being placed in prerelease custody, the prisoner-

> (I) has been determined under the System to be a minimum or low risk to recidivate pursuant to the last 2 reassessments of the prisoner; or

> (II) has had a petition to be transferred to prerelease custody or supervised release approved by the warden of the prison, after the warden's determination that-

> (aa) the prisoner would not be a danger to society if transferred to prerelease custody or supervised release;

> (bb) the prisoner has made a good faith effort to lower their recidivism risk through participation in recidivism reduction programs or productive activities; and

> (cc) the prisoner is unlikely to recidivate; or

> (ii) in the case of a prisoner being placed in supervised release, the prisoner has been

DISHOT

2

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

determined under the {2022 U.S. Dist. LEXIS 5} System to be a minimum or low risk to recidivate pursuant to the last reassessment of the prisoner.

Following the conclusion of the notice and comment period, the BOP issued a regulation effective on January 19, 2022, entitled "Application of FSA Time Credits." 28 C.F.R. § 523.44. The regulation sets forth various criteria that must exist before the BOP "may apply [ETCs] toward prerelease custody or early transfer to supervised release." These criteria essentially follow those set forth in Section 3624(g), including that an inmate must have: earned ETCs in an amount equal to the remainder of his or her imprisonment term; shown through periodic risk assessments "a demonstrated recidivism risk reduction" or "maintained a minimum low recidivism risk during the term of imprisonment"; had the remainder of his or her imprisonment term computed under applicable law; and maintained a minimum or low recidivism risk through his past two assessments and received the Warden's approval to be transferred to prerelease custody or supervised release. 28 C.F.R. § 523.44(b)-(c).

The BOP has not yet issued its Program Statement on how ETCs are to be applied. In the Motion, Respondent represents that the Program Statement is "forthcoming in the near future," but{2022 U.S. Dist. LEXIS 6} does not identify when this will be or provide any facts to support that statement. [Bugarin Decl. ¶ 14.] Respondent asserts that it "is expected" that the Program Statement will "specify that prisoners with pending charges or detainers cannot apply their ETCs until resolution of the charges or detainers," but again, does not explain why such a provision is expected or any facts to support that conclusion. [*Id.*] It appears that Respondent relies on a June 24, 2022 memorandum issued by Catricia Howard, the BOP's Assistant Director for the Correctional Programs Branch, which states, *inter alia*: "To apply the [ETCs] earned, an inmate must otherwise be eligible to participate in pre-release placement, Therefore, an inmate must not have detainers or unresolved pending charges." [Bugarin Decl. ¶ 14; Ex. I ("Howard Memorandum").]

The Howard Memorandum does not state that its purpose is to convey the contents of the upcoming Program Statement or convey a newly articulated BOP policy, nor does it cite to any statutory or regulatory basis for the above-noted statement. Rather, the Howard Memorandum states that its purpose is to advise BOP staff of a "new SENTRY tracking method for unresolved{2022 U.S. Dist. LEXIS 7} pending charges, including criminal, supervised release violations, and unknown immigration status charges." The Howard Memorandum advises that an automated system to calculate and apply ETCs is being developed and that for this new system to function, detainers and unresolved charges must be tracked in SENTRY. The Howard Memorandum then describes the "interim process" to be followed to track unresolved pending charges and detainers and how this ultimately will work with the SENTRY system. Local staff are directed to "audit" inmates and update SENTRY, with a goal of preventing inmates with unresolved pending charges from being awarded ETCs and released early as a result. The Howard Memorandum contemplates that audits for inmates being released within a year should be completed within 60 to 90 days, and those with later release dates within 90 to 120 days.

Petitioner has criminal charges pending in the State of Missouri in two separate state criminal cases based on domestic assault and other assault charges, one involving felony charges and the other misdemeanor charges. Both state criminal cases are open at present. [Bugarin Decl. ¶ 5; Ex. B.] (Hereafter, the "Missouri criminal cases."]{2022 U.S. Dist. LEXIS 8}

Petitioner contends that he has received a "low" risk assessment in connection with his FSA-required risk assessment. He also contends that he has participated in programming that qualifies under the FSA for treatment as ETCs and for which he has accrued over seven months' worth of ETCs. [Petition at 3; Opposition at 1 n.1.] Respondent does not dispute these assertions. [Motion at 8;

DISHOT                                        3

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Bugarin Decl. ¶¶ 12 and 15, noting that Petitioner is classified as eligible to earn ETCs, has been assessed as having a low risk of recidivism, and had earned a total of 210 days of ETCs as of July 30, 2022.] Nonetheless, the BOP has categorized Petitioner as ineligible to have his earned ETCs applied to his sentence due to his pending Missouri criminal cases. [Bugarin Decl. ¶ 13.]

**PETITIONER'S CLAIM**

The gravamen of the Petition is that Petitioner is being wrongly denied early release from FCI-Terminal Island pursuant to his earned ETCs. Petitioner alleges that, but for this wrongful denial, he should be released on supervised release or prerelease custody as of some unspecified date in August 2022.

Respondent has construed the Petition as raising two claims, with the first being a claim based on an alleged **{2022 U.S. Dist. LEXIS 9}** wrongful denial to Petitioner of the "standard" nine months off his sentence based on his participation in a BOP Residential Drug Abuse program ("RDAP"). The parties are in dispute about whether Petitioner actually has participated in all of the required components of the RDAP he commenced in October 2021. Petitioner contends that he "has been consistently participating in RDAP since October 2021, and his RDAP "class" of approximately 25 prisoners is set to complete the program and graduate in late august 2022. [Opposition at 2 n.2 and 15.] Respondent contends that while Petitioner commenced the RDAP in October 2021, he has not completed it and, in any event, on January 10, 2022, was notified that he is ineligible for early RDAP release due to the pending Missouri criminal cases. [Bugarin Decl. ¶ 10; *see* Dkt. 8 (corrected version of Ex. G.] Respondent also contends that Petitioner's RDAP claim is administratively unexhausted and not cognizable.

The Court need not resolve any of the above-noted RDAP issues or disputes. In his Opposition, Petitioner flatly and explicitly denies that he is seeking any relief related to his RDAP participation or that the Petition raises any sort of RDAP-based **{2022 U.S. Dist. LEXIS 10}** claim. [Opposition at 2-3.] Petitioner asserts that the only habeas claim he makes is that set forth below, namely, a claim related to his FSA ETCs and the BOP's refusal to apply them to effect an early release to prerelease custody or supervised release. The Court will take Petitioner at his word. Accordingly, the only claim at issue in this case and requiring resolution is the following:

Petitioner argues that he has earned approximately seven months' worth of ETCs, which if applied as required under the FSA, would cause him to be released by the end of August 2022, whether to supervised release or some form of prerelease custody. Petitioner represents that he has met the above-noted eligibility requirements of 18 U.S.C. § 3624(g)(1) and 28 C.F.R. § 523.44, namely, he has earned sufficient ETCs, his risk of recidivism has been assessed and consistently remained at Low, and the BOP has computed the remainder of his term. He asserts that as of January 20, 2022, the BOP and Respondent agreed that he is entitled to have his ETCs applied toward an early release, but that on June 24, 2022, the BOP and Respondent "reversed course" and subsequently told him that no ETCs would be applied to his sentence due to the pending Missouri **{2022 U.S. Dist. LEXIS 11}** criminal cases.

Petitioner contends that the "shall be applied" language of the FSA set forth in 18 U.S.C. § 3632(d)(4)(C) is mandatory subject only to the list of disqualifying offenses set forth in 18 U.S.C. § 3632(d)(4)(D) and the preclusion on early release of inmates with final orders of deportation set forth in 18 U.S.C. § 3632(d)(4)(E). Petitioner notes that he is not serving a sentence for a disqualifying offense and has not been ordered to be removed. Petitioner argues that these exceptions show that if Congress had wished to carve out from the mandatory "shall be applied" language of Section 3632(d)(4)(C) another exception - namely, for prisoners with pending state criminal cases or detainers - it could and would have done so.

DISHOT                                                    4

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Petitioner alleges that he will suffer irreparable harm unless the BOP is required to apply the approximately seven months of ETCs to his sentence that he has earned and therefore release him on either supervised release or prerelease custody.

## DISCUSSION

In the Motion, Respondent attacks the Petition on two relevant grounds.

First, Respondent argues that Petitioner's FSA/ETCs claim should be dismissed without reaching its merits, because Petitioner has not complied with the administrative exhaustion requirement applicable to Section 2241 habeas petitions. With{2022 U.S. Dist. LEXIS 12} respect to administrative exhaustion, the Petition alleges only that Petitioner has had multiple "communications" with unidentified prison staff relating to his claimed right to an early release under the FSA, but that staff have informed him that the decision (finding him ineligible for early release due to his pending Missouri criminal cases) is final and that he will not receive any ETC-related benefits despite being eligible. Respondent claims that Petitioner did not invoke the BOP's formal administrative review process (discussed *infra*) until August 2, 2022 - after the Petition was filed. Petitioner claims, however, that he previously attempted to resolve this dispute with the BOP through informal procedures once he learned that the BOP would not apply ETCs to him and was told that the BOP's decision was "final," and since then, he has not met with success with respect to his efforts to follow the formal administrative review process. Petitioner contends that, therefore, exhausting his administrative remedies at this juncture would be futile.

Second, Respondent concedes that Petitioner's calculation of the amount of his ETCs is correct and that he would qualify for early release{2022 U.S. Dist. LEXIS 13} under the FSA but for the pending Missouri criminal cases. Respondent contends, however, that the decision to find Petitioner ineligible for early release falls within its discretion, because the BOP is entitled to interpret the FSA to allow it to deny application of earned ETCs to those federal inmates who have pending criminal charges or a detainer, as stated in the Howard Memorandum. As discussed below, Respondent does not argue that the Howard Memorandum should receive *Chevron* level deference,1 given that it is not a regulation enacted after notice and comment. Instead, Respondent argues that the statement in the Howard Memorandum at issue - that inmates with pending criminal charges and detainers are ineligible for early released despite their earned ETCs - is entitled to *Skidmore* deference,2 because the Howard Memorandum constitutes a persuasive interpretation of the FSA provisions set forth in 18 U.S.C. §§ 3632(d)(4)(C) and 3624(g).

## I. Administrative Exhaustion

For federal prisoners such as Petitioner, the BOP has in place an administrative remedy procedure by which inmates can seek formal review of their complaints regarding any aspect of imprisonment. Generally, the procedure requires a prisoner to first{2022 U.S. Dist. LEXIS 14} pursue an informal review of the issue at hand and, if unsuccessful, then pursue a three-step formal administrative remedy process upward through the "final administrative appeal" that renders a claim administratively exhausted. *See* 28 C.F.R. §§ 542.10-542.19; *Nigro v. Sullivan*, 40 F.3d 990, 992 (9th Cir. 1994).

With respect to administrative exhaustion and Section 2241 petitions:

> Under the doctrine of exhaustion, "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed . . . remedy has been exhausted." *McKart v. United States*, 395 U.S. 185, 193, 89 S. Ct. 1657, 23 L.Ed.2d 194 (1969) (citation and internal quotation marks omitted). Exhaustion can be either statutorily or judicially required.*Laing v. Ashcroft*, 370 F.3d

DISHOT                                              5

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

994, 997-98 (9th Cir. 2004).

Section 2241 does not contain an exhaustion requirement, and thus, exhaustion is not a jurisdictional prerequisite. *Brown v. Rison*, 895 F.2d 533, 535 (9th Cir. 1990). For prudential reasons, however, federal courts require Section 2241 petitioners to exhaust their administrative remedies prior to seeking habeas relief. *Ward v. Chavez*, 678 F.3d 1042, 1045 (9th Cir. 2012); *see also Singh v. Napolitano*, 649 F.3d 899, 900 (9th Cir. 2011). Requiring a petitioner to exhaust his administrative remedies aids "judicial review by allowing the appropriate development of a factual record in an expert forum," conserves "the court's time because of the possibility that the relief applied for may be granted at the administrative level," and allows "the administrative agency an opportunity to correct errors occurring{2022 U.S. Dist. LEXIS 15} in the course of administrative proceedings." *Ruviwat v. Smith*, 701 F.2d 844, 845 (9th Cir. 1983) (*per curiam*). Dismissal is appropriate when a federal prisoner has not exhausted the administrative remedies made available by the BOP. *Martinez v. Roberts*, 804 F.3d 570, 571 (9th Cir. 1986) (*per curiam*).

Courts have discretion to waive the exhaustion requirement when administrative remedies are inadequate or their exercise would be futile, or irreparable injury would result without immediate judicial intervention. *See, e.g., Ward*, 678 F.3d at 1045; *Laing*, 370 F.3d at 1000; *see also Acevedo-Carranza v. Ashcroft*, 371 F.3d 539, 542 n.3 (9th Cir. 2004). Although "courts have discretion to waive the exhaustion requirement when prudentially required, this discretion is not unfettered." *Laing*, 370 F.3d at 998; *see also Murillo v. Mathews*, 588 F.2d 759, 762, n.8 (9th Cir. 1978) ("Although the '(a)pplication of the rule requiring exhaustion is not jurisdictional, but calls for the sound exercise of judicial discretion,' it is not lightly to be disregarded.") (citation omitted). A "key consideration" in exercising such discretion is whether "'relaxation of the requirement would encourage the deliberate bypass of the administrative scheme.'" *Laing*, 370 F.3d at 1000 (citation omitted).

The record shows that Petitioner had not completed the BOP's administrative review process with respect to his FSA/ETCs claim before he brought this lawsuit. He does not claim to have done so.3 Rather, Petitioner asserts that he has{2022 U.S. Dist. LEXIS 16} tried to resolve this situation without success and has been told that the BOP's decision is "final." He argues that therefore, administrative exhaustion would be futile and he would suffer irreparable injury were the Court to hold him to the administrative exhaustion requirement.

With respect to the Petitioner's claim of irreparable injury, the Supreme Court has held that "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Nebraska Penal and Corr. Complex*, 442 U.S. 1, 7, 99 S. Ct. 2100, 60 L. Ed. 2d 668 (1979) (finding no liberty interest exists in being released prior to sentence expiration); *see also Jacks v. Crabtree*, 114 F.3d 983, 986 n.4 (9th Cir. 1997) (finding no due process liberty interest in federal statute relating to one-year sentence reductions for participation in drug programs, because the BOP's denial of such a reduction based on implementing regulation's requirement that the inmate not have been convicted of specified prior violent offenses "merely means that the inmate will have to serve out his sentence as expected").

In *Cohen v. United States*, No. 20-CV-10833 (JGK), 2021 WL 1549917, at *4 (S.D.N.Y. Apr. 20, 2021), the Court rejected a federal inmate's argument that he would suffer irreparable harm if required to administratively exhaust his claim regarding the calculation of his FSA ETCs, because "there{2022 U.S. Dist. LEXIS 17} is no basis to conclude that Mr. Cohen's service of his sentence violates his constitutional rights." *See also Amato v. Pullen*, No. 3:21-cv-01475 (KAD), at 8 (D. Ct. May 10, 2022) (in which petitioner (who had a state criminal detainer) argued he would incur irreparable harm if the ETCs he claimed to have earned were not applied, finding that the exhaustion

DISHOT                                        6

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

requirement should not be excused, because "there is no constitutional violation in requiring him to serve his entire sentence").4 In *Cohen*, the Court further noted that, "to the extent that Mr. Cohen argues that potential ETCs will be useless to him after he has completed his term of home confinement, he ignores the fact that ETCs can be applied toward time on supervised release and he faces a term of three years of supervised release. See 18 U.S.C. § 3632(d)(4)(C)." 2021 WL 1549917, at *4. Like Mr. Cohen, Petitioner also faces court-mandated supervised release, in this instance, for five years. [Bugarin Decl. ¶ 4.a., Ex. A.] The Court concludes that requiring Petitioner to comply with the administrative exhaustion requirement as to his claim would not result in irreparable harm.

That said, this does not mean that requiring administrative exhaustion in this instance would not{2022 U.S. Dist. LEXIS 18} harm Petitioner. This is not a case in which factual questions exist regarding the amount of ETCs Petitioner claims to have accrued or what their effect would be if the BOP were to apply them. The Petition alleges that Petitioner had accrued approximately seven months' worth of ETCs and Respondent agrees that as of July 30, 2022, Petitioner had "earned a total of 210 days of FSA ETCs" and that "Petitioner's assertion that he has accrued approximately seven months of ETCs as of the date he signed the Petition [July 11, 2022] appears roughly to comport with the BOP's calculation." [Motion at 8; Bugarin Decl. ¶ 15.] There is no need to develop an administrative record on this question. In addition, Respondent concedes that, but for the existence of the pending Missouri criminal cases, "Petitioner would be eligible to apply those ETCs once the number of credits equaled the number of days left to serve on his sentence." [Bugarin Decl. ¶ 15; Motion at 8.] Given the timing involved here - namely, Petitioner's presumptive release date of April 9, 2023, and the by now over seven months of ETCs he has accrued - it seems likely that if Petitioner were to prevail in this action and to have his{2022 U.S. Dist. LEXIS 19} ETCs applied, he would be entitled to some form of early release either immediately or very shortly thereafter.5

The question here, instead, is a purely legal one, *viz.*, may the BOP interpret the FSA to allow it to impose a precondition to ETC application that is not set forth anywhere in the FSA, *i.e.*, that a prisoner be free of pending criminal charges or a detainer? Put otherwise, this case involves only a statutory interpretation issue divorced from any particular facts relating to Petitioner, not the resolution of any fact unique to him. There is no need to develop the record through administrative proceedings, because this statutory interpretation question can be resolved without doing so. Moreover, the BOP's position on the question at hand is clear, both as expressed in the Howard Memorandum and by its arguments set forth in the Motion. Further administrative review proceedings would not clarify the BOP's position, which is that it has the discretion to interpret and implement the FSA in a manner that requires a federal prisoner to be free of pending criminal charges or detainers in order to have the ETCs he or she has earned be applied.

In *McCarthy v. Madigan*, 503 U.S. 140, 145-46, 112 S. Ct. 1081, 117 L. Ed. 2d 291 (1992), the Supreme Court succinctly articulated{2022 U.S. Dist. LEXIS 20} the purposes behind requiring administrative exhaustion, including affording an administrative agency the chance to correct its own error or affording deference to an agency's exercise of its own discretionary power or producing a useful record for judicial consideration. These concerns, however, are not implicated in this case, and in any event, as the Supreme Court also made clear, courts may decline to require exhaustion "even where administrative and judicial interests would counsel otherwise." *Id.* at 146. Courts must apply an "'intensely practical'" "balancing principle" and decide if the litigant's interest in immediate judicial review might "'outweigh the government's interest in the efficiency or autonomy that the exhaustion doctrine is designed to further.'" *Id.* (citations omitted. When the agency involved has predetermined the issue before it, this is a recognized circumstance in which "the interests of the individual weigh heavily against requiring administrative exhaustion." *Id.* at 146, 148 (citing *Houghton*

DISHOT.                                           7

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

*v. Shafer*, 392 U.S. 639, 640, 88 S. Ct. 2119, 20 L. Ed. 2d 1319 (1968), for the proposition that: "in view of the attorney General's submission that the challenged rules of the prison were 'validly and correctly applied to petitioner,' requiring administrative review through**{2022 U.S. Dist. LEXIS 21}** a process culminating with the Attorney General 'would be to demand a futile act'"). *See also Fraley v. U.S. Bureau of Prisons*, 1 F. 3d 924, 925 (9th Cir. 1993) (per curiam) (waiving exhaustion as futile when the initial request for an administrative remedy was denied based on BOP policy and, therefore, the Regional Director "almost certainly would have denied" a further appeal as well due to that policy).

The Court finds that this is an appropriate instance in which to exercise its discretion to excuse Petitioner's failure to complete the administrative review process before bringing this action, finding that requiring completion of the process before considering the merits of Petitioner's claim would be futile. The record indicates that Petitioner has not had any success to date with attempting to resolve this issue with the BOP and has been told that the BOP's decision is "final." It seems virtually certain that Petitioner's claim will be rejected by the BOP upon further administrative review. Given the timing involved here, this case does not present an instance in which excusing the exhaustion requirement would encourage the deliberate bypass of the administrative process. The record supports the conclusion that Petitioner learned of the BOP's**{2022 U.S. Dist. LEXIS 22}** reversal of its prior advice that his ETCs would be applied only very recently and that he promptly began efforts at informal resolution, which have failed, before turning to the federal court system. Given Petitioner's April 2023 release date and over seven months of earned ETCs, this is a situation in which a timely resolution is needed for harm to be avoided, even if the situation is not deemed to rise to the level of irreparable injury.

Accordingly, the Court will proceed to the merits of Petitioner's FSA/ETCs claim.

## II. The FSA/ETCs Claim

The question presented by the Petition is whether the FSA allows the BOP to implement a policy precluding federal prisoners with pending criminal charges or detainers from having their accrued ETCs applied to afford them early release (hereafter, the "Pending Charges Exclusion"). The FSA does not state anywhere explicitly that the BOP may do so, nor does the BOP's recently-finalized implementing regulation (28 C.F.R. § 523.44). Rather, the Pending Charges Exclusion is set forth in the recent Howard Memorandum, although Respondent asserts that it is "expected" that the Exclusion also will be contained in the BOP's yet to be issued Program Statement.6

Respondent concedes**{2022 U.S. Dist. LEXIS 23}** that 18 U.S.C. § 3624(g)(1) - which sets forth the requirements for prisoners to be "eligible" to obtain early release under the FSA pursuant to and application of their accrued ETCs - "does not require as a precondition for eligibility that the prisoner be free of a pending criminal charge or detainer against him." [Motion at 16.] Rather, "it is the BOP's position that such a requirement is salutary." [*Id.*] Respondent contends that despite Section 3624(g)'s specific delineation of what "eligible" means, the FSA "leaves room" for the BOP to exercise its own discretion to determine what constitutes "eligible." Respondent argues that the BOP may expand Section 3624's eligibility criteria by adding the additional Pending Charges Exclusion precondition, because the second sentence of 18 U.S.C. § 3632(d)(4)(C) requires the BOP to: (1) determine whether the eligibility criteria of Section 3624(g)(1) are met for a subject prisoner; and (2) then determine between prerelease custody and supervised release as the appropriate form of FSA early release for the prisoner. [Motion at 15-16.] In addition, Respondent notes that under the general statute regarding the BOP's inmate placement decisions - 18 U.S.C. § 3621(b) - the BOP is entitled to consider the "nature and circumstances" of the inmate's "offense,"**{2022 U.S. Dist. LEXIS 24}** which allows it to consider an inmate's pending criminal charges or detainer in making a Section

DISHOT                                     8

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

3621(b) decision regarding an inmate's place of imprisonment, whether in selecting a particular prison initially or when transferring to another prison or in deciding whether prerelease custody is appropriate. Respondent reasons that, because it can consider pending criminal charges or detainers in making these types of placement decisions under Section 3621(b), and because the FSA statutes also provide for early release, then the FSA's provisions should be deemed to include the same discretion allowed the BOP under Section 3621(b). [Motion at 16-17.] Finally, Respondent argues that, at a minimum, the Court must accord *Skidmore* deference to its position set forth in the Howard Memorandum as an informal agency opinion, because it is persuasive. [Motion at 18-20.]

As this is a case in which an agency's statutory interpretation is in issue, the Court begins, as it must, with the "now-canonical formulation" of the salient questions:

> "When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions." . . . First, applying the ordinary tools of statutory construction, the court must determine **{2022 U.S. Dist. LEXIS 25}** "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." . . . But "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *City of Arlington, Texas v. Federal Communications Commission*, 569 U.S. 290, 296, 133 S. Ct. 1863, 185 L. Ed. 2d 941 (2013) (quoting *Chevron*, 467 U.S. 842-43).

As discussed earlier, federal prisoners who participate in and complete eligible evidence-based recidivism reduction programs and/or productive activities "shall" earn ETCs pursuant to the calculation formula provided in the statute. 18 U.S.C. § 3632(d)(4)(A). Under Section 3632(d)(4)(C), these earned ETCs "shall be applied toward time in prerelease custody or supervised release." The statute does not say "may" be applied or are to be applied in the BOP's discretion, nor does it contain any language that rationally can be read to modify the simple and straightforward "shall be applied" directive. Consistently, the second sentence of the statute states that the BOP "shall transfer" prisoners who are eligible under 18 U.S.C. § 3624(g) into either prerelease custody or supervised release. Again, the statute **{2022 U.S. Dist. LEXIS 26}** does not say that the BOP may transfer prisoners in its discretion; the language once again is a mandatory directive. The only discretionary aspect of Section 3632(d)(4)(C) is that the BOP gets to pick which of these two options for early release "shall" be provided to the prisoner in the fulfillment of the BOP's mandatory duty to so transfer a prisoner upon mandatory application of ETCs.

Of course, the FSA's "shall" directives to apply ETCs and transfer an inmate to one of two forms of early release only apply if a prisoner is "eligible" under Section 3624(g), a determination to be made by the BOP. The FSA expressly provides for which prisoners are "ineligible" through Section 3632(d)(4)(D)-(E). This FSA statute denominates "ineligible" prisoners as prisoners who have been <u>convicted</u> of any of the listed federal crimes or who are subject to a final order of removal. There is nothing in this clear language that can be read or stretched to encompass prisoners who have been charged with, but not yet convicted of, crimes or who have detainers. Indeed, Respondent does not contend that Section 3632(D)-(E) support the Pending Charges Exclusion.

The FSA's delineation of who is an "eligible" prisoner is set forth in Section 3624(g). This FSA statute states that an "eligible" prisoner is **{2022 U.S. Dist. LEXIS 27}** one who has: (1) earned ETCs in an amount equal to the remainder of his term; (2) either a demonstrated recidivism risk reduction as shown by periodic risk assessments *or* maintained a minimum or low recidivism risk during his term of imprisonment; (3) had the remainder of his term computed; and (4) if being placed on supervised release, has been determined to be a minimum or low risk to recidivate pursuant to his last

DISHOT                                                                  9

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

reassessment, *or* if being placed in prerelease custody, has been determined to be a minimum or low risk to recidivate pursuant to his last two reassessments or had a petition to be transferred to early release approved by the warden. Some of the Section 3624(g) criteria obviously implicate the BOP's past exercise of its expertise and/or discretion, such as when it has made periodic risk assessments for prisoners over time. There is nothing in Section 3624(g), however, which says or implies that if the BOP *already* has determined that a prisoner is a minimum or low recidivism risk through past periodic risk assessments or otherwise, the BOP then possesses the further discretion to impose a new and additional precondition to early release, namely, that the prisoner presently must be free of pending criminal **{2022 U.S. Dist. LEXIS 28}** charges or detainers. Indeed, Section 3624(g) states just the opposite, namely, that the FSA's early release provision, whether through prerelease custody or supervised release, "applies" to a prisoner who has been found to meet the four Section 3524(g) criteria.

In sum, under the clear terms of Section 3632(d)(4)(C), a prisoner who has met the four criteria of Section 3624(g) *is* "eligible" for early release, "shall" have his ETCs applied, and "shall" be transferred to one of two early release options. In *O'Bryan v. Cox*, No. CIV 21-4052, 2021 WL 3932275, at *3 (D. S.D. Sept. 1, 2021), the Court examined the above-quoted language of Section 3632(d)(4)(A) and (C) and found that the statutes' use of the word "shall" was mandatory, as in, imposed a duty rather than a grant of discretion. The Court noted that in the FSA, Congress utilized "both mandatory words and permissive words," and its "intent was clear in each instance." *Id.* The Court agrees.

The Court notes that several additional matters underscore the mandatory nature of the above FSA language. <u>First</u>, like the FSA itself, the BOP's implementing regulation - 28 C.F.R. § 523.44 - is bereft of any indication that the BOP possesses the discretion it now claims it possesses to impose an additional precondition on prisoners who seek early release through an application of their ETCs. That the BOP chose to omit from the **{2022 U.S. Dist. LEXIS 29}** regulation any mention of the Pending Charges Exclusion, or anything of that nature, is telling.7

<u>Second</u>, on January 19, 2022, the BOP issued its final "FSA Time Credits" rule, which "codifies the [BOP's] procedures regarding the earning and application of time credits as authorized by the First Step Act of 2018 (FSA)." 87 Fed. Reg. 2705-01, 2022 WL 159155 (Jan. 19, 2022) ("Final Rule"). The Final Rule prefaces its text by noting that eligible inmates earn ETCs "towards prerelease custody or early transfer to supervised release" and that "[a]s required under the FSA, an inmate cannot earn [ETCs] if that inmate is serving a sentence for a disqualifying offense or has a disqualifying prior conviction." 87 Fed. Reg. at 2706. As with the implementing BOP regulation, no mention is made that inmates who have pending criminal charges or detainers are similarly ineligible - an exclusion from eligibility that plainly would have been a relevant matter to raise if the BOP was considering adding it to the statutory criteria, as it now claims it can do.

At one point, the Final Rule addressed a received comment expressing concern that ETCs would not be applied to supervised release and would be applied only to inmates transferred to prerelease custody. The BOP explained **{2022 U.S. Dist. LEXIS 30}** that under the FSA, ETCs may be applied to both forms of early release. The BOP then concluded: "The Bureau assures commenters that [ETCs] will be applied to early transfer to supervised release, as authorized by the FSA in 18 U.S.C. 3632(d)(4)(C) and 18 U.S.C. 3624(g). . . . The Bureau intends to adhere to the parameters of the FSA to permit application of [ETCs] toward transfer to supervised release pending development of policy, in individual cases as appropriate." 87 Fed. Reg. at 2712. Thus, in the Final Rule, the BOP clearly stated its intent to follow the terms of the FSA by applying ETCs to effect early release.

Even more significant is the BOP's response to a comment received expressing the view that all

DISHOT                                    **10**

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

inmates willing to participate in FSA-compliant programming should earn ETCs and that certain convictions should be removed from the Section 3632(d)(4)(D) listing of ineligible prisoners. The BOP swiftly rejected that suggestion, noting that "[i]t is outside the [BOP's] authority to alter the exclusions as stated in the FSA" and that "the statutory exclusions may only be amended by Congress." 87 Fed. Reg. at 2713. In short, in its Final Rule, the BOP plainly recognized and acknowledged that it lacked the authority to modify the FSA's statutorily-designated categories of which{2022 U.S. Dist. LEXIS 31} prisoners are eligible or ineligible to earn and have ETCs applied so as to result in early release - a position that is directly contrary to that taken here, in which the BOP essentially argues that it possesses an unconstrained discretion to impose additional exclusions not set forth in the FSA when it would be "salutary" to do so.

The Final Rule gave no indication that the BOP believed itself to possess the authority and discretion to impose the Pending Charges Exclusion as a limitation on which prisoners may obtain early release under the FSA. There is no hint of anything in this respect in the Final Rule and, if anything, the BOP made clear its view that it lacked the "authority" to impose this additional exclusion, stating that only Congress could specify which prisoners are ineligible for ETC-based early release. Had the BOP actually possessed the view set forth in the Howard Memorandum that it may prevent prisoners from receiving FSA early release based on their pending criminal charges or detainers, it should have so stated in its earlier proposed rule published on November 25, 2020,8 so as to allow Congress and members of the public the chance to comment on this proposed interpretation{2022 U.S. Dist. LEXIS 32} of BOP powers under the FSA. That it did not do so only underscores the unpersuasive nature of its argument here that the FSA's text affords it the authority and discretion to impose additional criteria for eligibility such as the Pending Charges Exclusion.

Third, Respondent's contention - that because the BOP may consider "the nature and circumstance" of an inmate's offense when it makes a Section 3621(b) decision regarding the placement of an inmate, this same discretion exists when it makes FSA early release decisions - only cuts against its arguments here. Section 3621(b) sets forth a host of factors to be considered by the BOP in making its discretionary inmate placement decisions under that statute - discretionary decisions that, by the statute's terms, are not judicially reviewable. In marked contrast, Section 3632(d)(4)(C) couches the FSA's early release requirement as a mandatory, nondiscretionary duty - *to wit*, the BOP "shall" apply the prisoner's ETCs and then "shall" transfer the prisoner to one of two forms of early release to be determined by the BOP. Had Congress intended that the BOP's FSA-based early release decisions be governed by and conditioned upon the BOP's discretionary consideration of the multiple factors{2022 U.S. Dist. LEXIS 33} listed in Section 3621(b), it knew how to do this and could and would have said so. That Congress omitted anything akin to the Section 3621(b) discretionary factors from the pertinent FSA provisions regarding early release indicates that they are not a part of them. Moreover, Section 3632(d)(4)(C) contemplates supervised release as an early release option once ETCs are applied, and Section 3621(b) has nothing to do with supervised release. Why would Congress have meant to afford the BOP with discretion as to one of the two FSA early release options available (prerelease custody) but not the other? There is no tenable reason to believe that it did.9

Finally, Respondent argues that it is entitled to decline to apply Petitioner's ETCs because he is a "flight risk" by virtue of the existence of the pending Missouri criminal cases. Given the Court's conclusion that the BOP lacks the ability to refuse to apply ETCs for reasons not articulated in the FSA, this contention fails on its face. It also fails for lack of support, given that Respondent presents no evidence that Petitioner actually is a flight risk, and as Petitioner notes, he has been on a personal recognizance bond in the Missouri criminal cases since his 2018 arrest. [*See* Bugarin Decl., Ex.{2022 U.S. Dist. LEXIS 34} B at 43, 54.] In any event, as Petitioner further notes, whether he is

DISHOT                                    11

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

released pursuant to FSA early release now or in April 2023, in the regular course of sentence expiration, any such putative flight risk is the same. In either instance, Respondent can do what it does when any prisoner with pending charges or a detainer completes his sentence and is scheduled to be released - notify the authorities from the appropriate jurisdiction that if they wish to take the prisoner into custody, they should do so upon his release.

When a court is tasked with statutory construction, it is fundamental that "words generally should be 'interpreted as taking their ordinary, contemporary, common meaning ... at the time Congress enacted the statute.'" *Wisconsin Cent. Ltd. v. United States*, __ U.S. __, 138 S. Ct. 2067, 2074, 201 L. Ed. 2d 490 (2018) (citation omitted). "Agencies exercise discretion only in the interstices created by statutory silence or ambiguity; they must always '"give effect to the unambiguously expressed intent of Congress."'" *Util. Air Regulatory Grp. v. EPA*, 573 U.S. 320 326 (2014) (citations omitted).

Here, there are no such interstices, because the relevant portions of the FSA are not ambiguous or incomplete and Congress's intent is clearly expressed through mandatory statutory language. The language of the FSA shows that Congress{2022 U.S. Dist. LEXIS 35} made a conscious choice to do three things. One, by its use of "shall be applied" and "shall transfer" language in Section 3632(d)(4)(C), Congress made the application of earned ETCs to effect early release mandatory for prisoners "eligible" under Section 3624(g). Two, by Section 3624(g), Congress spelled out the prerequisites for a prisoner to be "eligible," which have been described earlier and do not contemplate any additional criteria or precondition to release akin to the Pending Charges Exclusion. Third, by Section 3632(d)(4)(C), Congress explicitly determined which prisoners are "ineligible" to have the FSA's ETC and early release provisions applied to them, and none of these expressly delineated categories include prisoners who have pending charges or detainers. Had Congress wished to include prisoners with pending charges or detainers among the categories of prisoners who are "ineligible" under the FSA, it could and would have done so. The Congressional intent expressed through the FSA's mandatory provisions precludes interpreting the pertinent language of the FSA to allow the BOP to impose the additional precondition to early release eligibility contemplated by the Pending Charge Exclusion. Such an interpretation would be contrary to the clear{2022 U.S. Dist. LEXIS 36} and unambiguous mandatory FSA language that requires application of earned ETCs for eligible prisoners and then transfer to early release.

"[I]n interpreting a statute a court should always turn first to one, cardinal canon before all others," which is "that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253-54, 112 S. Ct. 1146, 117 L. Ed. 2d 391 (1992). The Court has followed that canon here given the clear wording of the pertinent FSA provisions. "When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" "When the words of a statute are unambiguous ... judicial inquiry is complete." *Id.* at 254. When the intent of Congress is clear, as here, there is no need to engage in a further administrative agency deference analysis under *Chevron*. See *City of Arlington, Texas*, 569 U.S. at 296; *O'Bryan*, 2021 WL 3932275, at *4.10

The Court notes one final matter. By its terms, the FSA plainly seeks to incentivize prisoners to better prepare themselves for a life outside prison by participating in and completing those programs and activities that the BOP, in its expertise, has designated as evidence-based recidivism reduction programs and productive activities. Their reward for doing so, assuming they{2022 U.S. Dist. LEXIS 37} also have led their prison lives in a manner that leads them to receive low and medium recidivism risk assessments, is knowing that, by its terms, the FSA has told the BOP that it "shall" apply their earned ETCs and "shall" afford them an early release. Allowing the BOP - on a belated and after-the-fact basis - to purport to write into the FSA statutes a discretion for itself that does not appear therein and to snatch away from prisoners whose efforts have earned them ETC-related

DISHOT                                          12

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

benefits not only is unfair but would be contrary to the FSA's goal of incentivizing prisoners to engage in these salutary programs and activities.

Accordingly, the Court concludes that the Petition should be granted.

**RECOMMENDATION**

For all of the foregoing reasons, IT IS RECOMMENDED that the Court issue an Order: (1) accepting this Amended Report and Recommendation; (2) denying the Motion; (3) granting the Petition and directing that, pursuant to 18 U.S.C. § 3632(d)(4)(C) (a) the BOP immediately apply Petitioner's earned ETCs to date to calculate his applicable early release date, (b) thereafter release Petitioner on that early release date pursuant to an appropriate early release option to be determined by the BOP, and (c) if that early{**2022 U.S. Dist. LEXIS 38**} release date has passed, to release him within 20 days pursuant to an appropriate early release option to be determined by the BOP; and (4) directing that Judgment be entered accordingly.

DATED: September 7, 2022

/s/ Gail J. Standish

GAIL J. STANDISH

UNITED STATES MAGISTRATE JUDGE

DISHOT                                    **13**

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

ATTACHMENT

2

---

**DARRYL MOODY, Petitioner v. ACTING WARDEN T. GUBBIOTTI,1 Respondent**
**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**
**2022 U.S. Dist. LEXIS 181399**
**CIV. NO. 21-12004 (RMB)**
**October 3, 2022, Decided**
**October 3, 2022, Filed**

---

**Counsel**                    {2022 U.S. Dist. LEXIS 1}For DARRYL MOODY, Petitioner: LUCILLE
A. BONGIOVANNI, LEAD ATTORNEY, BONGIOVANNI LAW, PHILADELPHIA, PA.
                              For WARDEN DAVID E. ORTIZ, Respondent: ANGELA
JUNEAU, LEAD ATTORNEY, USAO, OFFICE OF THE U.S. ATTORNEY, DISTRICT OF
NEW JERSEY, NEWARK, NJ; JOHN ANDREW RUYMANN, LEAD ATTORNEY, OFFICE
OF THE US ATTORNEY, TRENTON, NJ.

**Judges:** RENÉE MARIE BUMB, United States District Judge.

Opinion

**Opinion by:**       RENÉE MARIE BUMB

Opinion

**RENÉE MARIE BUMB, United States District Judge**

This matter comes before the Court upon Petitioner Darryl Moody's petition for writ of habeas corpus
under 28 U.S.C. § 2241 (Pet., Docket No. 1), where he seeks early release by applying Time Credits
("TCs") he earned for completion of recidivism reduction programming and productive activities
under the First Step Act ("FSA") toward his early release. Respondent filed an answer to the petition
and opposes habeas relief (Docket No. 4). Petitioner filed briefs in reply to the answer (Docket Nos.
5, 6), and the parties filed supplemental briefs in response to this Court's orders to show cause. (Doc.
Nos. 21, 22, 24, 25, 26, 27.) For the reasons discussed below, this Court will grant the habeas
petition in part and direct Respondent to calculate Petitioner's earned TCs and apply the{2022 U.S.
Dist. LEXIS 2} TCs in accordance with 18 U.S.C. §§ 3632(d)(4)(C) and 3624(g). This decision does
not preclude the BOP from honoring the detainer lodged against Petitioner.

**I. JURISDICTION**

Jurisdiction under 28 U.S.C. § 2241 exists, in relevant part, where a prisoner alleges "[h]e is in
custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §
2241(c)(3). The Third Circuit has held that habeas jurisdiction exists over a prisoner's claim that the
BOP miscalculated his sentence, where the claim "if successful, would result in his speedier release
from custody[.]" *Eiland v. Warden Fort Dix FCI*, 634 F. App'x 87, 89 (3d Cir. 2015). Likewise,
Petitioner's claim that he is entitled to earlier supervised release upon application of his earned TCs
is properly brought under § 2241 because he presents a challenge to the duration of his confinement.

**II. THE FIRST STEP ACT TIME CREDITS**

On January 19, 2022, the BOP issued its final rule codifying the BOP's procedures for earning and
application of TCs under the FSA. In a comment to the final rule, the BOP stated, consistent with this

DISHOT                                    1

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the
restrictions and terms and conditions of the Matthew Bender Master Agreement.

Court's holding in *Goodman v. Ortiz*, No. CV 20-7582 (RMB), 2020 U.S. Dist. LEXIS 153874, 2020 WL 5015613, at *6 (D.N.J. Aug. 25, 2020), that "FSA Time Credits should be earned for programs successfully completed on or after December 21, 2018, the date of the enactment of the First Step Act, instead of January 15, 2020, as indicated in the proposed rule."**{2022 U.S. Dist. LEXIS 3}**2

> [t]he FSA provides that eligible inmates earn FSA Time Credits toward prerelease custody or early transfer to supervised release for successfully completing approved Evidence-Based Recidivism Reduction (EBRR) Programs or Productive Activities (PAs) assigned to each inmate based on the inmate's risk and needs assessment. Inmates eligible to apply Time Credits under the FSA include individuals sentenced under the U.S. Code. As required by the FSA, an inmate cannot earn FSA Time Credits if that inmate is serving a sentence for a disqualifying offense or has a disqualifying prior conviction. However, such inmates may still earn other benefits for successfully completing recidivism reduction programming, such as increased privileges (commissary, visiting, and telephone) for participation in EBRR Programs or PAs, as authorized by the Bureau.

Pertinent here, the BOP amended the interim rule

> to allow inmates eligible under the First Step Act to receive retroactive Time Credits for programming and activities they participated in starting on December 21, 2018, the date of the FSA's enactment. In determining how to award FSA Time Credits during the period before all individualized risk and needs**{2022 U.S. Dist. LEXIS 4}** assessments had been completed, the Bureau faces administrative challenges. Consistent with the phased-in approach contemplated by the FSA, the Bureau did not have mechanisms in place to methodically track participation in EBRRs and PAs until January 15, 2020, because comprehensive uniform tracking codes did not exist. In addition, it was not until that date that the Bureau had completed individualized risk and needs assessments for every inmate-and thus had a basis to conclude that there was an evidence-based reason to assign a particular program to, or recommend particular activities for, an inmate in order to reduce a particular inmate's risk of recidivism. Thus, in many instances, inmates were participating in programs for reasons other than addressing a criminogenic need.

> Due to these administrative difficulties, for inmates participating in programming after the date of the FSA's enactment, but before the date that Bureau had completed all risk and needs assessments (December 18, 2018, to January 14, 2020), it is not feasible for the Bureau to connect individual inmate participation in programming to individualized risk and needs assessments, since the risk and needs assessment**{2022 U.S. Dist. LEXIS 5}** tool did not exist until well after the date of the FSA's enactment. Instead, for inmate participation in programming during this period of time, the Bureau will exercise its discretion to award FSA Time Credits to inmates otherwise deemed eligible under the First Step Act by applying the same criteria as that applied to inmate participation in authorized EBRR programs or PAs recommended based on a risk and needs assessment after January 2020 to determine the inmate's retroactive Time Credit balance. Eligible inmates will be afforded a presumption of participation for the period between December 21, 2018, and January 14, 2020 and be awarded Time Credits accordingly.*See* supra n. 2.

## III. BACKGROUND

### A. The Original Petition

As mentioned above, before Petitioner filed his original petition, this Court held in *Goodman* that prisoners who earned sufficient TCs during the phase-in period of the FSA's recidivism risk reduction program "could be released prior to the end-date [January 15, 2022] for the two-year phase-in[.]"

DISHOT                                          2

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

*Goodman*, 2020 U.S. Dist. LEXIS 153874, 2020 WL 5015613, at *6 The BOP disagreed with *Goodman* at that time. Thus, when Petitioner filed his petition for writ of habeas corpus under 28 U.S.C. § 2241 in June 2021, the BOP denied Petitioner's administrative remedy request{**2022 U.S. Dist. LEXIS 6**} for application of his earned TCs toward early release. (Pet., Docket No. 1 at 2.) In answer to the petition, Respondent opposed habeas relief based on Petitioner's failure to exhaust administrative remedies3 and on the merits of his claim that BOP should apply his earned TCs. (Answer, Docket No. 6.)

**B. The BOP Final Rule**

While the habeas petition was pending, and as the January 15, 2022 date approached, change was on the horizon. The BOP proposed rule on implementation of FSA TCs was published in the Federal Register on November 25, 2020. 85 FR 75268. The public comment period ended on January 25, 2021.4 As a result of a large number of responses during the public comment period, the January 2022 BOP final rule contained many significant changes. Acknowledging the new rule, this Court ordered Respondent to calculate Petitioner's TCs under the new rule and file a supplemental brief on whether the habeas petition was moot. (Order, Docket No. 8.)

**C. The Parties' Supplemental Briefs**

Respondent submitted that Petitioner had not earned any TCs applicable toward pre-release custody because inmates were only eligible to apply TCs "if they have 'been determined under the [PATTERN] System to be a minimum or{**2022 U.S. Dist. LEXIS 7**} low risk to recidivate pursuant to the last 2 reassessments of the prisoner.' 18 U.S.C. § 3624(g)(1)(D)(i)(II)" (Respt's Supp. Brief, Docket No. 12 at 1.) Respondent explained that the BOP prioritized inmates for whom it would calculate earned TCs to those who had minimum or low risk PATTERN scores and were within 24 months of release. (*Id.*) Petitioner did not fall into this category because his medium PATTERN score made him ineligible. (*Id.*) Further, Respondent noted that Petitioner had not completed any recidivism risk reduction programs or productive activities for his assessed needs. (Respt's Supp. Brief, Docket No. 12 at 2.) Nonetheless, the petition was not moot because Petitioner was seeking immediate application of earned TCs. (*Id.*)

Petitioner, now represented by counsel, filed a supplemental brief in response. Contrary to Respondent's position that Petitioner had not earned any TCs, Petitioner noted that the BOP final rule permitted inmates with a higher PATTERN score to earn TCs, and that credits could be earned retroactive to the enactment of the First Step Act on December 21, 2018. (Petitioner's Supp. Brief, Docket No. 18 at 2.) Petitioner contended that he was in danger of untimely release because he{**2022 U.S. Dist. LEXIS 8**} had earned at least 410 days of TCs retroactive to December 21, 2018, resulting in a release date of June 7, 2022. (*Id.* at 3.) Acknowledging that his medium PATTERN score precluded application of his earned TCs, Petitioner asserted that he had maintained good conduct for over two years, and his case manager had not yet awarded the point reduction that would bring his PATTERN score to low. (*Id.* at 3.)

Petitioner contested Respondent's claim that he could only earn TCs for his "identified needs" based on a risk and needs assessment. Petitioner had been wait-listed for courses based on his assessed needs. (*Id.* at 4.) Addressing the shortage of programs available, the BOP stated that "inmates will not be penalized if specifically recommended EBRR Programs or PAs are unavailable to them...." (*Id.*, quoting 87 Fed. Reg. 2711.) Thus, Petitioner contended that he should be awarded TCs for his work as a barber, despite the position not falling under UNICOR or Federal Prison Industries, and that he should earn credit for religious activities. (*Id.* at 5.)

Petitioner then filed a supplemental brief to inform the Court that, as predicted, his PATTERN score

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

had changed to low, which made him eligible for application{**2022 U.S. Dist. LEXIS 9**} of TCs. (Petitioner's Supp. Letter Brief, Docket No. 19.) Furthermore, Petitioner asserted it is undisputed that his Good Conduct Time release date is July 22, 2023, and his home detention eligibility date is as early as March 1, 2023. (*Id.* at 2.) Thus, based on the 410 days of TCs that he claims, his release date would be June 7, 2022, a date that has passed. (Petitioner's Supp. Letter Brief, Docket No. 19.) Petitioner requested his immediate release. (*Id.*) The following day, this Court ordered Respondent to show cause why habeas relief should not be granted. (Order, Docket No. 20.)

**D. The Parties' Responses to the First Order to Show Cause**

Respondent agreed that Petitioner's most recent PATTERN risk score is low but maintained that Petitioner required two consecutive minimum or low PATTERN scores for application of TCs to prerelease custody under 18 U.S.C. § 3624(g). (Respt's Supp. Brief in Response to Order to Show Cause, Docket No. 21 at 2.) Respondent further noted that even if Petitioner had two consecutive qualifying PATTERN scores, he could not be released because there is an active detainer lodged on him by the Pennsylvania Board of Probation and Parole. (*Id.*) The BOP looked to Program Statement{**2022 U.S. Dist. LEXIS 10**} 7310.04, Community Corrections Center (CCC) Utilization and Transfer Procedure, and determined that "any First Step Act ETCs that Moody has earned cannot be applied at this time because of the active detainer for pending criminal charges lodged on his account." (Respt's Supp. Brief in Response to Order to Show Cause, Docket No. 21 at 2.) Respondent reasoned that

> 18 U.S.C. § 3624(g)(2) defines the types of prerelease custody that the Bureau of Prisons may place an inmate in as Home Confinement and RRCs. In accordance with Program Statement 7310.04, inmates with unresolved pending charges, or detainers, which will likely lead to arrest, conviction, or confinement shall not ordinarily participate in CCC programs.(Respt's Supp. Brief in Response to Order to Show Cause, Docket No. 21 at 2, internal citations omitted.)

Petitioner responded that the docket sheet provided by Respondent did not reflect any violation of parole ("VOP") against Petitioner in Pennsylvania. (Response to Supp. Brief by Respondent, Docket No. 22 at 1.) Even if there was a VOP detainer lodged, Petitioner argued that it is not a "pending criminal charge" which would prevent application of his TCs. (*Id.*) Petitioner explained:

> [t]he offense date{**2022 U.S. Dist. LEXIS 11**} of the docket number in question is 4/27/2006, over sixteen years ago. According to Respondent's submission, the detainer listed was lodged on December 7, 2017, when Defendant was already in federal custody for nearly three years (beginning 01/14/2015). Petitioner Moody did not obtain a new criminal charge in Pennsylvania while in federal prison. If any detainer exists, such would be based on the instant federal conviction. It would defy logic that a violation based on the conviction that is the subject of Petitioner's current federal imprisonment could simultaneously operate to bar Petitioner's release from the same sentence. Such would be fundamentally unfair to Petitioner. A parole violation does not constitute a pending criminal charge, as neither the 2006 PA charge nor the present federal charge are "pending". The charge against Petitioner in the Commonwealth of Pennsylvania was disposed of in 2008 and Petitioner served his sentence in Pennsylvania State Prison.(Response to Supp. Brief by Respondent, Docket No. 22 at 1-2.)

Additionally, Petitioner avowed that he was not seeking prelease custody but rather early placement on supervised release, which required only that "the prisoner{**2022 U.S. Dist. LEXIS 12**} has been determined under the System to be a minimum or low risk to recidivate pursuant to the last reassessment of the prisoner" (*Id.* at 2, quoting 18 U.S.C. § 3624(g)(1)(D)(ii)). In contrast, § 3624(g)(1)(D)(i)(I), cited by Respondent, requires two assessments with a low or minimum recidivism risk score before a prisoner can be placed in *prerelease custody to a residential reentry center or*

DISHOT                                          4

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

*home confinement* upon application of his TCs. (*Id.*) (emphasis added). Based on the disputed facts and the question over which statutory provision is applicable to Petitioner's request for habeas relief, this Court issued a second Order to Show Cause why the habeas petition should not be granted. (Order, Docket No. 23.)

**E. The Parties' Responses to the Second Order to Show Cause**

Respondent provided further support to establish that there is a detainer lodged against Petitioner. (Respt's Reply Brief in Response to Order to Show Cause, Docket No. 24 at 2.) Respondent clarified that,

> on November 13, 2017, Pennsylvania Board of Probation and Parole employee Elliot Smeal sent a request for a detainer to the BOP in response to an inquiry regarding Moody's parole violation in Case No. CP-23-CR-004005-2006. Smeal indicated that a warrant was being issued**{2022 U.S. Dist. LEXIS 13}** because Moody had not returned to the custody of Pennsylvania officials and no revocation hearing had yet been held. Smeal further stated that revocation proceedings would remain pending until Moody had returned to the custody of Pennsylvania authorities. On December 7, 2017, the Pennsylvania Board of Probation and Parole lodged the official detainer.
>
> After a detainer has been lodged, no later than 90 calendar days before the inmate's release, BOP staff are required to notify the authority that has lodged a detainer of the inmate's projected release date. *See* BOP Manual, Chapter 6, Page 4. The authority that filed the detainer must then notify the BOP of its intent to take custody of the inmate. If the requesting authority indicates in writing that it will not take custody of the inmate, the detainer will be removed at that time. Here, to date, the BOP has not received any correspondence from the Pennsylvania Board of Probation and Parole requesting the removal of the detainer. Accordingly, no later than 90 calendar days before Mr. Moody's projected release date of September 1, 2023, the BOP will notify the Pennsylvania Board of Probation and Parole of Moody's projected release date.**{2022 U.S. Dist. LEXIS 14}**(Respt's Reply Brief in Response to Order to Show Cause, Docket No. 24 at 2-3) (citations omitted).

Moreover, Respondents submit that the detainer was known to Petitioner, who acknowledged the detainer in April and July 2022, in his Individual Needs Plan and his Summary Reentry Plan. (*Id.* at 3.) Finally, Respondent contends this is the first time that Petitioner requested application of his TCs to his term of supervised release. (*Id.* at 3.) While his low PATTERN score qualifies for this relief, Respondent will not release Petitioner at this time due to the detainer. (*Id.*)

Petitioner responded again. First, he notes that Respondent provided a copy of his release plan, which shows his plan calls for his supervised release. (Petitioner's Supp. Letter Brief, Docket No. 25 at 1, citing Attach. E, Docket No. 24-2 at 17.) Second, Petitioner disputes that the detainer constitutes a pending criminal charge that precludes his early release, because the case referenced in connection with the detainer, the crime resulting in his federal sentence, is an adjudicated matter. (Petitioner's Supp. Letter Brief, Docket No. 25 at 1.) Moreover, in opposing Petitioner's early supervised release, Respondent**{2022 U.S. Dist. LEXIS 15}** erroneously relies on regulatory provisions that apply only to prerelease home confinement and residential reentry centers. (*Id.*, citing BOP Program Statement 7310.04.)

Respondent submitted a letter brief on September 7, 2022. (Resp't Reply Brief in Response to Order to Show Cause, Docket No. 26.) Respondent argues that the BOP is prohibited from releasing Moody to either prerelease custody or supervised release as long as there is an active detainer for him. Moreover, the BOP has discretion to determine the placement of inmates who have earned sufficient TCs to receive a sentence reduction. Moody's supervision release plan does not

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

demonstrate how the BOP will apply his earned TCs.

Petitioner followed up with a letter brief on September 20, 2022. Petitioner has now received a second low recidivism risk PATTERN score, which makes him eligible for application of earned TCs to either prerelease custody or supervised release, and he seeks supervised release. (Petr's Letter Brief, Docket No. 27.) Petitioner submits that the only thing standing in the way of his early release is the Commonwealth of Pennsylvania's detainer, which he believes is invalid or illegal.5 Even if the BOP must ultimately**{2022 U.S. Dist. LEXIS 16}** honor the detainer, which Petitioner does not concede, he contends that BOP must immediately calculate and apply his FSA credits and determine whether he shall be released to the Commonwealth of Pennsylvania or to immediate supervised release.

## IV. DISCUSSION

The passage of time, the change in the BOP's implementing rule, and the parties' arguments have narrowed the issue before the Court. Petitioner seeks application of his earned TCs toward early supervised release pursuant to 18 U.S.C. § 3624(g)(1)(D)(ii). Petitioner's July 19, 2022 Supervision Release Plan indicates that Petitioner is eligible for supervised release, without application of Time Credits, on September 1, 2023, and that he requested his term of supervised release be relocated to the Northern District of Georgia. (Attach. E, Docket No. 24-2 at 17.) The Supervision Release Plan does not address application of Petitioner's earned TCs toward early supervised release. (*Id.*) The Pennsylvania detainer is noted on the plan. (*Id.*)

Petitioner is eligible for application of TCs earned toward his early supervised release if he meets the following requirements under 18 U.S.C. § 3624, which provides, in relevant part:

(g) Prerelease custody or supervised release for risk and needs**{2022 U.S. Dist. LEXIS 17}** assessment system participants.--

(1) Eligible prisoners.--This subsection applies in the case of a prisoner (as such term is defined in section 3635) who--

(A) has earned time credits under the risk and needs assessment system developed under subchapter D (referred to in this subsection as the "System") in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment;

(B) has shown through the periodic risk reassessments a demonstrated recidivism risk reduction or has maintained a minimum or low recidivism risk, during the prisoner's term of imprisonment;

(C) has had the remainder of the prisoner's imposed term of imprisonment computed under applicable law; and . . .

(D)(ii) in the case of a prisoner being placed in supervised release, the prisoner has been determined under the System to be a minimum or low risk to recidivate pursuant to the last reassessment of the prisoner. . . .

(3) Supervised release.--If the sentencing court included as a part of the prisoner's sentence a requirement that the prisoner be placed on a term of supervised release after imprisonment pursuant to section 3583, the Director of the Bureau of Prisons may transfer the prisoner to begin any such term of supervised**{2022 U.S. Dist. LEXIS 18}** release at an earlier date, not to exceed 12 months, based on the application of time credits under section 3632.In turn, 18 U.S.C. 3632 provides,

(4) Time credits.--

DISHOT                                                      6

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

(A) In general.--A prisoner; except for an ineligible prisoner under subparagraph (D), who successfully completes evidence-based recidivism reduction programming or productive activities, shall earn time credits as follows:

(i) A prisoner shall earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.

(ii) A prisoner determined by the Bureau of Prisons to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.

(B) Availability.--A prisoner may not earn time credits under this paragraph for an evidence-based recidivism reduction program that the prisoner successfully completed--

(i) prior to the date of enactment of this subchapter; or

(ii) during official detention prior to the date that the prisoner's sentence commences{2022 U.S. Dist. LEXIS 19} under section 3585(a).

(C) Application of time credits toward prerelease custody or supervised release.--Time credits earned under this paragraph by prisoners who successfully participate in recidivism reduction programs or productive activities shall be applied toward time in prerelease custody or supervised release. The Director of the Bureau of Prisons shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release.18 U.S.C. § 3632(d)(4)(D) provides a list of crimes of conviction that render a prisoner ineligible for TCs and subsection (E) precludes deportable prisoners from applying TCs to prerelease custody or supervised release.

If the Director of the BOP [or presumably a designee, such as the warden] determines that Petitioner's earned TCs should be applied to early supervised release, rather than prerelease custody to a residential reentry center or home confinement,6 there is no statutory provision or BOP regulation that precludes application of TCs toward early supervised release of prisoners who have state detainers lodged against them. As Petitioner suggested, the provisions regarding detainers in BOP Program Statement 7310.04 apply only to prerelease custody to residential reentry centers{2022 U.S. Dist. LEXIS 20} and home confinement.7 As Respondent points out, however, supervised release is different because it does not involve BOP custody. "[S]upervised release commences on the day the person is released from imprisonment . . . ." 18 U.S.C. § 3624(e); see United States v. Johnson, 529 U.S. 53, 57, 120 S. Ct. 1114, 146 L. Ed. 2d 39 (2000) ("Supervised release does not run while an individual remains in the custody of the Bureau of Prisons.") When a prisoner is subject to a state detainer, the BOP cannot immediately release a prisoner without notifying the state to determine whether it will take custody of the prisoner. This would only appear to present a problem if the BOP has not calculated a prisoner's earned TCs in sufficient time to give the state the notice, typically no later than 90 days before the supervised release date, to determine whether it will take custody of the prisoner.

Petitioner has a reasonable belief that he has earned sufficient TCs, which if applied to early supervised release, would entitle him to earlier supervised release under the First Step Act. 18 U.S.C. § 3624(g)(3) states "the Director of the Bureau of Prisons may transfer the prisoner to begin any such term of supervised release at an earlier date, not to exceed 12 months, based on the application of time credits under section 3632." This discretionary{2022 U.S. Dist. LEXIS 21} language would appear to permit the BOP to honor the detainer by giving the Commonwealth of

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Pennsylvania sufficient notice of Petitioner's supervised release date, based on its calculation and application of Petitioner's earned TCs.

Therefore, Respondent shall immediately calculate Petitioner's earned TCs. On August 1, 2022, Petitioner notified this Court that his PATTERN score had been adjusted to minimum. According to his supervised release plan, Petitioner is eligible for supervised release on September 1, 2023, without application of any Time Credits.8 If he has earned sufficient Time Credits to receive the maximum of 12 months early supervised release, his release date would be September 1, 2022. It is now 30 days beyond that date. Although Respondent has not had the benefit of this Court's ruling, Respondent should have anticipated the possibility of this Court granting habeas relief and begun preparations to calculate Petitioner's Time Credits and notify the Commonwealth of Pennsylvania of Petitioner's potential early release. Therefore, rather than giving Respondent the typical full 90-day period to notify the Commonwealth of Pennsylvania of Petitioner's impending early release,**{2022 U.S. Dist. LEXIS 22}** this Court will reduce that period to 14 days. If the Commonwealth does not take custody by that date, BOP shall release Petitioner to early supervised release within 14 days of the date of this Opinion and accompanying Order, assuming Petitioner has earned sufficient TCs for the maximum 12-month early supervised release period under § 3632.

## V. CONCLUSION

For the reasons discussed above, the Court will grant the habeas petition in part and direct Respondent to calculate Petitioner's earned TCs under the FSA immediately, and provide an update to this Court within 7 days of the date of entry of this Order. If Petitioner has earned sufficient Time Credits, Respondent shall notify of the Commonwealth of Pennsylvania of Petitioner's supervised release date of October 18, 2022.

An appropriate Order follows.

Date: **October 3, 2022**

/s/ Renée Marie Bumb

**RENÉE MARIE BUMB**

**United States District Judge**

**ORDER**

For the reasons set forth in the accompanying Opinion,

**IT IS** therefore on this **3rd day of October 2022**,

**ORDERED** that the petition for writ of habeas corpus under 28 U.S.C. § 2241 is **GRANTED in part**; the BOP shall immediately calculate Petitioner's earned Time Credits under the First Step Act, 18 U.S.C. §§ 3624(g); 3632(d)(4)(C), and if Petitioner has earned**{2022 U.S. Dist. LEXIS 23}** sufficient Time Credits under § 3624(g)(1)(A), give notice to the Commonwealth of Pennsylvania of Petitioner's early supervised release date of October 18, 2022, at which time, if the Commonwealth of Pennsylvania does not take custody of Petitioner, he shall be released to early supervised release; and it is further

**ORDERED** that Respondent shall provide this Court with a status update within 7 days of the date of entry of this Order.

/s/ Renée Marie Bumb

**RENÉE MARIE BUMB**

DISHOT                                                    8

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

**United States District Judge**

DISHOT                                        **9**

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.